UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KERILEI R. OLDOERP,<br><br>          Plaintiff,<br><br>     v.<br><br>WELLS FARGO AND COMPANY LONG TERM DISABILITY PLAN; METROPOLITAN LIFE INSURANCE COMPANY,<br><br>          Defendants. | **Case No. 3:08-cv-05278 RS**<br><br>ORDER ON PLAINTIFF'S MOTION FOR ATTORNEY FEES AND COSTS |

## I.     INTRODUCTION

In this ERISA action, which was closed in February 2014 following a bench trial, plaintiff Kirelei Oldoerp seeks $441,462 in attorney fees and $10,831.14 in litigation costs. Defendants Wells Fargo and Co. Long Term Disability Plan and Metropolitan Life Insurance Company (collectively "MetLife") oppose her motion, arguing she is entitled to few costs and no fees. In the alternative, MetLife seeks a significant reduction in the requested amount, contending counsel for Oldoerp billed an unreasonable number of hours, and at unjustifiably high rates. For the reasons explained below, Oldoerp is entitled to fees and costs, but not quite as much as she requests. Defendants are ordered to pay plaintiff $406,185 in attorney fees and $8,213.70 in taxable costs and out-of-pocket expenses, totaling an award of $414,398.70.

II.     ATTORNEY FEES

A. Oldoerp's Entitlement to Fees

As an initial matter, the parties dispute whether fees should be awarded at all. In an ERISA action, fees are discretionary, not mandatory. *See Hummell v. S.E. Rykoff & Co.*, 634 F.2d 446, 452 (9th Cir. 1980). "[A] court in its discretion may award fees and costs to either party, as long as the fee claimant has achieved 'some degree of success on the merits.'" *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 245 (2010) (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 694 (1983)). MetLife does not dispute that Oldoerp achieved success on the merits. Nonetheless, it contends that under these circumstances—in particular, where defendants prevailed at the first bench trial, only for the Ninth Circuit to reverse upon a clarification of the proper standard of review—the court should decline to award fees.

In deciding whether to award fees in an ERISA action, a district court should consider, among other things, the five "*Hummel* factors":

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

634 F.2d at 453. In applying these factors, the court "should apply its discretion consistent with the purposes of ERISA, those purposes being to protect employee rights and to secure effective access to federal courts." *Smith v. CMTA–IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir. 1984). ERISA's fee provision should therefore "be read broadly to mean that a plan participant or beneficiary, if he prevails in his suit under § 1132 to enforce his rights under the plan, should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Id.* at 589 (internal quotations omitted).

A review of the *Hummel* factors reveals that while some tip in MetLife's favor, no "special circumstances" would render a fee award to Oldoerp unjust. *See id.* The first factor— the degree of culpability or bad faith—favors MetLife. Although defendants erred in denying Oldoerp's claim, there is no evidence that their actions were taken in bad faith. Moreover, as evidenced by the initial findings of fact and conclusions of law issued in 2011, defendants'

conduct was defensible under an "abuse of discretion" standard.  (*See* Findings of Fact and Conclusions of Law, May 2, 2011, ECF No. 47).  While that standard is not applicable here, the prior findings nonetheless reflect defendants' relatively low culpability.  The second factor weighs in Oldoerp's favor, as MetLife does not contest it can satisfy a fee award.  The third factor, which focuses on the potential deterrent effect of a fee award, also tips in plaintiff's favor. A fee award could help ensure that, going forward, MetLife exercises more care in processing claims—especially claims pertaining to chronic fatigue, depression, and other conditions that may require the administrator to evaluate a claimant's self-reported symptoms.  The fourth factor—whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA—implicates two considerations.  First, Oldoerp brings this claim for herself and not for any other beneficiaries. This weighs slightly against a fee award.  Second, however, Oldoerp's case ultimately helped clarify a significant legal question: Is an "abuse of discretion" standard appropriate where an ERISA Summary Plan Document vests discretion in the plan's administrator?  On balance, therefore, the fourth factor is neutral.  The fifth factor—the relative merits of the parties' positions—redounds in Oldoerp's favor.  Plaintiff won every major disputed legal issue in this case:  the appropriate standard of review (de novo), whether extrinsic evidence was admissible (yes), and whether MetLife erred in denying her claim (yes).

In sum, Oldoerp is entitled to attorney fees.  There are no "special circumstances" that "would render such an award unjust."  *See* 746 F.2d at 589.  While defendants' initial success in this case is somewhat relevant to the first *Hummel* factor, it is far from sufficient to preclude a fee award.

B.  Reasonableness of Fees

Fee awards in ERISA actions are calculated using a hybrid lodestar/multiplier approach. *See McElwaine v. U.S. West, Inc.*, 176 F.3d 1167, 1173 (9th Cir. 1999).  This approach has two parts: (1) the court determines the lodestar amount by multiplying the number of hours reasonably expended in the litigation by a reasonable hourly rate; and (2) the court may adjust the lodestar upward or downward using a multiplier based on factors not subsumed in the initial calculation.  *Van Gerwen v. Guarantee Mutual Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).

3

The party seeking an award of fees must submit evidence supporting the hours worked and the rates claimed. *Id.* The court may reduce these hours if the documentation is inadequate or if the hours are duplicative, excessive, or unnecessary. *Id.* "There is a strong presumption that the lodestar figure represents a reasonable fee, and a multiplier may be used only in rare or exceptional cases where the lodestar is unreasonably low or unreasonably high." *Thivierge v. Hartford Life & Acc. Ins. Co.*, 2006 WL 2917926 (N.D. Cal. Oct. 11, 2006) (citing *Van Gerwen*, 214 F.3d at 1045).

> i.  Attorney Hourly Rates

The fee applicant bears the burden of producing satisfactory evidence "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895, n.11 (1984). "Affidavits of the plaintiff['s] attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiff['s] attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of America v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). As a general rule, the forum district represents the relevant legal community. *See Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

Russell Petti, Oldoerp's lead attorney, claims he is entitled to fees at the rate of $600/hour. In support, he submits (i) two declarations from other experienced ERISA attorneys, (ii) two declarations from former federal prosecutors, both of whom worked with Petti when he was an Assistant United States Attorney, and (iii) excerpts of rate determinations from other cases. This evidence provides ample justification for Petti's claimed rate of $600/hour. The rate determinations from other cases are especially persuasive. Most recently, in 2011, a district judge in the Central District of California held that $550 was a reasonable rate for Petti. *See Dunner v. University of Southern California Long Term Disability Plan*, 09-01732 (C.D. Cal. Apr. 26, 2011); (ECF No. 82, Exh. R). The year prior, a different judge in that same court held that $550 was a reasonable rate. *See Whalen v. Standard Insurance Co.*, 09-0978 (C.D. Cal. Feb. 4, 2010); (ECF No. 82, Exh. Q). In addition, Petti attaches five other court orders in which district judges have granted his requested hourly rate. Given that at least three years have passed

since the entry of the Central District orders, and considering Petti's significant ERISA experience and demonstrated skill as an advocate, $600 is a reasonable hourly rate for his services.

MetLife faults Petti for failing to include declarations from attorneys practicing in the Northern District of California. Instead, all four declarants practice in Los Angeles. While MetLife is correct that the forum district represents the relevant legal community, *see Gates,* 987 F.2d at 1405, defendants do not argue that there is a meaningful distinction between rates charged by ERISA attorneys in the Northern and Central Districts.[1] Furthermore, some California district courts have recognized that it is appropriate to apply a "national rate" when assessing ERISA fee requests:

> Although the Court recognizes that the "relevant community," when determining appropriate attorneys' rates, is generally the one in which the district court sits, it is appropriate to consider the declarations of attorneys in other jurisdictions because ERISA cases involve a national standard, and attorneys practicing ERISA law in the Ninth Circuit tend to practice in different districts. Furthermore, the Court observes that ERISA cases are often considered to be complex, ERISA plaintiff cases are often undesirable, and Plaintiff's attorneys possess extensive experience in ERISA law.

*Mogck v. Unum Life Ins. Co. of Am.*, 289 F. Supp. 2d 1181, 1190-91 (S.D. Cal. 2003); *see also McAfee v. Metro. Life Ins. Co.*, 625 F. Supp. 2d 956, 975 (E.D. Cal. 2008) (same) *aff'd*, 368 F. App'x 771 (9th Cir. 2010). Given that it is appropriate to consider declarations from other districts in ERISA cases, and considering that there appears to be no meaningful difference between ERISA attorney rates in the Northern and Central Districts, Petti has submitted more than enough evidence to justify his claimed hourly rate of $600/hour.

John Breslo, Oldoerp's attorney based in Arizona, requests fees at the rate of $500/hour. In support, he submits (i) a 1987 letter of recommendation from Senator John McCain, (ii) copies of various significant jury verdicts he has won in personal injury cases in recent years, and (iii) declarations from two other members of the Arizona bar stating that Breslo's claimed

---

[1] Indeed, it appears that $600/hour is a reasonable rate for an experienced ERISA attorney in the Northern District. *See Oster v. Standard Ins. Co.*, 768 F. Supp. 2d 1026, 1035 (N.D. Cal. 2011) ("The declarations of these ERISA specialists confirm that Mr. Coleman's $600 hourly rate is consistent with the prevailing rates for ERISA litigation specialists in the San Francisco Bay Area.").

rate is reasonable. One declaration is from Gabriel Kory, an attorney with eleven years of experience practicing in Arizona. The other is from Martin Solomon, an Arizona attorney who has known Breslo for thirteen years. Neither attorney works on ERISA cases, but both advocate on behalf of individual plaintiffs. Although neither attorney states his own current hourly rate, both declare that they are familiar with market rates in Arizona, and that Breslo's claimed rate of $500/hour is reasonable.

Breslo's supporting documents are not especially helpful. The McCain letter, which does not speak to Breslo's skill or experience as an attorney, is irrelevant. Further, although Breslo's ability to secure significant monetary awards for his clients is probative of his skill as a plaintiff's attorney, the submitted copies of jury verdicts are not particularly useful for assessing his reasonable hourly rate. While the attorney declarations are more probative of the reasonableness of Breslo's claimed rate, neither declarant reveals his *own* hourly rate. Accordingly, Breslo's evidence offers no guidepost for assessing the reasonableness of his claimed rate. Unlike Petti, Breslo does not submit court orders identifying a reasonable hourly rate for him in any prior cases. MetLife, meanwhile, argues that Breslo is only entitled to $325/hour. While defendants invoke a 2011 order from the District of Arizona finding that another ERISA attorney was entitled to that same rate, *see Mazet v. Halliburton Co. Long-Term Disability Plan*, 2011 WL 3290468 (D. Ariz. Aug. 1, 2011), there the rate was uncontested, and the order contains no meaningful discussion of the attorney's reputation, skill, or experience.[2]

Although Breslo's documentary evidence leaves something to be desired, it is evident that he has significant experience and has served as an effective advocate for his client in this case. While the supporting documents do not support his claimed rate of $500/hour, neither would MetLife's requested rate of $325/hour be sufficient. On balance, the evidence supports $450/hour as a reasonable rate for Breslo's services.

---

[2] Plaintiff's observation that the attorney in *Mazet* went to University of West Los Angeles School of Law, a "fourth-tier" law school with a low bar passage rate, bears no apparent relevance. Moreover, if plaintiff wishes to compare Breslo to the attorney in *Mazet*, it is worthy of note that the attorney in that action has apparently been a member of the Arizona bar since 1980, whereas Breslo has been practicing law since the early 1990s.

6

*ii.     Current Rates vs. Historical Rates*

The parties further dispute whether Breslo and Petti should be paid their current rates for all hours worked.  MetLife argues that because this case has been ongoing since 2008, it would be unfair to pay current rates for time Oldoerp's attorneys billed four or five years ago.  Defendants request that, for hours incurred through 2012, Breslo and Petti should be paid their historical rates.

The court has discretion to apply the rates in effect at the time the work was performed.  *Bell v. Clackamas Cnty.*, 341 F.3d 858, 868 (9th Cir. 2003).  It may "also award rates at an attorney's current rate where appropriate to compensate for the lengthy delay in receiving payment."  *Id.*  Oldoerp's attorneys waited more than five years to be paid for their work in this case.  Although Petti's rates have increased since the inception of the litigation, they have done so at a fairly modest pace.  For example, as explained above, Petti's prior rate of $550/hour was approved by various court orders in 2010 and 2011.  Now, more than three years since the order in *Dunner*, Petti's reasonable rate is $600/hour, representing a 9% increase.  Under these circumstances, where the case was filed nearly six years ago and where rewarding current rates does not trigger an inordinate increase in the overall fee award, it is appropriate to award attorney fees based on Petti's current reasonable rate of $600/hour and Breslo's reasonable rate of $450/hour.

C.  Reasonableness of Hours Billed

"In determining reasonable hours, counsel bears the burden of submitting detailed time records justifying the hours claimed to have been expended."  *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210 (9th Cir. 1986).  "Where the documentation of hours is inadequate, the district court may reduce the award accordingly."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  A district court should also exclude from the lodestar fee calculation any hours that were not "reasonably expended," such as hours that are excessive, redundant, or otherwise unnecessary.  *See id.* at 433–34.  MetLife raises four categories of objections to the hours billed by Oldoerp's counsel, arguing that Breslo and Petti (i) billed for administrative/clerical tasks, which are not recoverable, (ii) spent excessive time reviewing documents, (iii) spent excessive

time preparing for and traveling to hearings, and (iv) submitted various other entries that were excessive, duplicative, or otherwise unreasonable.

### i. *Clerical/Administrative Tasks*

Hours billed for administrative tasks are not compensable. *See Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir. 2009) (holding that tasks "clerical in nature" should be "subsumed in firm overhead rather than billed" and that "[w]hen clerical tasks are billed at hourly rates, the court should reduce the hours requested to account for the billing errors"). MetLife attaches a four-page appendix ("Appendix A") identifying hours spent on allegedly administrative or clerical tasks. In *Nadarajah*, the activities considered clerical were filing, obtaining transcripts, and document organization. *Id.* Some of Petti's and Breslo's tasks fall into this category. For example, in an entry typical for Petti, on 09/03/2009 he billed .3 hours for "Review and revise stipulation, file." The court in *Nadarajah* held that "filing" was a clerical task. *Id.* Similarly, many of Petti's entries include "arranging exhibits," "gathering exhibits," and creating tables. These, too, are administrative tasks.

At the same time, MetLife's appendix is overbroad, challenging numerous tasks that are entirely reasonable for an attorney to perform. Reviewing applicable local rules, for example, was an appropriate use of Petti's time as an attorney. It was also reasonable for Petti to review the accuracy of citations in legal briefs he submitted on behalf of his client. Only a few of Petti's and Breslo's entries appear to be purely clerical or administrative in nature:

- 03/30/2009: "Arranging exhibits for discovery motion." (0.6 hours)
- 12/23/2010: "Consideration of travel arrangements re trial." (.6 hours)
- 12/16/2011: "Putting brief in final, tables." (1.6 hours)
- 01/10/2013: "Scan and Bates label SSI file (review)." (0.4 hours)
- 08/30/2013: "Putting exhibit, declaration together." (0.8 hours)

(*See* Petti Declaration, ECF No. 82-2, Exh. S; Breslo Declaration, ECF No. 81-2, Exh. E). These entries, totaling 3 hours of Petti's time and 1 hour of Breslo's time, will be deducted from plaintiff's fee request.

Numerous of Petti's entries combine administrative tasks with actions that are otherwise reasonable for an attorney to perform on behalf of his client:

- 05/18/2009: "Review and revise Reply papers, <u>gather exhibits</u>." (1.5 hours)
- 09/03/2009: "Review and revise stipulation, <u>file</u>." (0.3 hours)
- 10/14/2010: "Arranging telephonic appearance, drafting stip and order, <u>filing same</u>." (1.4 hours)
- 10/14/2010: "Review and revise CMC, letter to clerk, <u>filing</u>." (0.4 hours)
- 09/23/2011: "Drafting extension letter to EC, <u>filing same</u>." (0.5 hours)
- 10/10/2011: "Review and revise brief, <u>prepare tables.</u>" (1.0 hour)
- 10/11/2011: "<u>Filing brief</u>, emails to help desk re: notice of manual filing, review rules for same." (0.5 hours)
- 12/08/2011: "Review rules, <u>filing</u>." (0.3 hours)
- 11/26/2012: "Review and revision motion, <u>filing</u>." (0.5 hours)
- 05/07/2013: "Review and <u>calendar</u> CMC order." (0.2 hours)
- 06/27/2013: "Review and <u>calendar</u> order." (0.3 hours)
- 08/30/2013: "Review and revise Opening TM, Motion to Admit, <u>file</u>." (3.8 hours).
- 09/10/2013: "Review and revise Opposition, <u>do filing</u>." (2.2 hours).
- 10/02/2013: "<u>Filing</u> Motion to Strike, letter to clerk." (0.5 hours).
- 11/20/2013: "Email to court reporter, <u>file</u> and prepare ordering form." (0.4 hours).
- 12/13/2013: "Drafting Declaration, review and revise same, <u>arrange exhibits</u>." (2.1 hours).
- 12/13/2014: "Review and revise papers, <u>file</u>." (0.8 hours)
- 12/20/013: "Final review of Response papers, <u>tables and filing</u>." (1.3 hours)
- 03/21/2014: "<u>Compiling exhibits</u>, review and revise Declaration." (1.4 hours)

(*See* Petti Declaration, ECF No. 82-2, Exh. S) (emphasis added). The Ninth Circuit permits district courts to impose percentage-based reductions where otherwise reasonable attorney tasks are included as part of a single billing entry that also includes unreasonable elements. *See Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (approving a 20% reduction for "block-billed" entries, but reversing the district court for indiscriminately reducing *all* hours billed). The aforementioned Petti entries, which total 19.4 hours, will be reduced by three hours—approximately fifteen percent—to account for the inclusion of tasks that are administrative or clerical in nature. Although attorneys who make detail-oriented billing entries "should not be punished for being meticulous and honest," *Palomares v. Astrue*, C-11-4515 EMC, 2012 WL

6599552 (N.D. Cal. Dec. 18, 2012), Petti's entries include enough apparently administrative work that this minor reduction is warranted.

### ii. Time Spent Reviewing Documents

Over the course of this five-year case, Petti spent 55.1 hours reviewing documents. MetLife contends this was an excessive and unreasonable use of Petti's time. In order to make effective arguments on behalf of his client, Petti was required to comb through a complex and lengthy administrative record comprised of a variety of medical reports and other documents. Petti also moved successfully for the admission into evidence of his client's Social Security Administration file, itself comprising an additional ninety-seven pages of records and reports. Petti should not be penalized for taking adequate time to formulate thorough, detail-oriented arguments on behalf of his client. The time spent reviewing documents was reasonable.

### iii. Time Spent Preparing For Hearings

MetLife argues that Petti and Breslo spent excessive time preparing for, and traveling to, hearings and conferences in this case. Petti billed 44.5 hours preparing for and attending four events: a 2009 status conference, the 2011 bench trial, the 2012 Ninth Circuit oral argument, and the 2013 bench trial. This hardly seems unreasonable, especially considering Petti's declaration that the travel time alone for these trips was 32 hours, thus leaving 12.5 hours for attendance and additional preparation. This, considering Petti's role as Oldoerp's oral advocate, is entirely reasonable.

Breslo, however, is another story. He spent 47 hours preparing for and attending the 2011 bench trial, 2012 Ninth Circuit argument, and 2013 bench trial. Breslo did not, however, participate in oral argument before this court or the Ninth Circuit. Although it was reasonable for Breslo to assist his co-counsel in preparing for oral argument, MetLife cannot reasonably be expected to pay for Breslo to observe Petti's advocacy at the rate of $450/hour.[3] Similarly, MetLife should not be expected to pay for Breslo's time during his travel to those events, nor, in

---

[3] While it is not presumptively unreasonable for a prevailing party to seek attorney fees on behalf of multiple lawyers in attendance at trial, in this instance, there does not appear to be a justification for two experienced attorneys (one of whom presented no oral argument) to be compensated for appearing at an ERISA bench trial.

light of Breslo's role, was it appropriate for him to bill *more* time for those events than Petti. Accordingly, Breslo's time is reduced by 37 hours.[4]

                            *iv.*    *Miscellaneous Other Objections (Appendix B)*

Finally, MetLife attaches an appendix (Appendix B) listing entries it claims should be omitted from the final tally. It argues that the entries are vague, duplicative, and/or not reasonably necessary. Of Petti's Appendix B entries, only one is problematic: a 09/24/2010 entry apparently regarding another case. In his reply, Petti retracts this item, which he claims was included by mistake. Accordingly, his time is reduced by 0.5 hours. Of Breslo's Appendix B entries, only a few are facially unreasonable. First, Breslo spent 0.6 hours drafting a fee agreement with Ms. Oldoerp. MetLife argues this activity should be subsumed in firm overhead. In response, plaintiff withdrew this entry from Breslo's fee request. Second, after the Ninth Circuit panel was announced, Breslo spent 3.5 hours researching the panel members. Petti, by comparison, spent 2.2 hours on panel research. As explained above, Breslo did not argue before the Ninth Circuit. While it was reasonable for him to conduct some research on the appellate panel, 3.5 hours is excessive, especially when compared to Petti's entry. It was unreasonable for Breslo to spend more than one hour on this task. Taking these two unreasonable entries together, Breslo's time is reduced by 3.1 additional hours.

The remainder of Petti's and Breslo's entries are reasonable. Although Breslo's entries generally are not as granular and detailed as Petti's, both attorneys documented their work with sufficient detail to support their request for fees.

D. <u>Lodestar Calculation</u>

Commensurate with the reductions discussed above, Petti and Breslo reasonably expended 552.7 hours and 165.7 hours, respectively, in connection with this case.[5] Applying

---

[4] This reduction includes time spent traveling to and attending the first bench trial (eight hours), the Ninth Circuit argument (seven hours), and the second bench trial (eight hours). It also includes a fourteen-hour reduction for excessive time spent preparing for these events. Excluding travel, Petti spent only 12.5 hours attending and preparing for the same events *and* a status conference.

[5] Petti's initial tally (559.2 hours) is reduced by 6.5 hours. Breslo's reported time (206.8 hours) is reduced by 41.1 hours.

11
08-cv-05278 RS Order on Attorney Fees

1   each attorney's reasonable rate, the lodestar amount comes to $406,185.[6] After determining the
2   lodestar amount, the court may adjust it "upward or downward using a multiplier based on
3   factors not subsumed in the initial calculation." *Van Gerwen*, 214 F.3d at 1045.  Neither party
4   requests a multiplier here.  Accordingly, Oldoerp is entitled to $406,185 in attorney fees.

###                                III.    COSTS

Oldoerp also seeks $10,831.14 in costs.[7]  In addition to basic filing costs, Oldoerp's counsel incurred service fees, messenger and delivery fees, travel costs, a mediation fee, and printing costs.  MetLife maintains that, aside from $805 in filing fees, Oldoerp's request is not supported by sufficient evidence.

As an initial matter, Oldoerp is entitled to taxable costs.  Civil Local Rule 54-3 allows taxation of certain categories of costs, some of which are relevant here: filing fees, service of process, reporter's transcripts obtained for appeal, and costs on appeal.  The bulk of Oldoerp's filing, service, and appeal-related transcript costs are thus appropriate.  One exception, however, is her request (dated August 11, 2011) for a $610.50 "filing fee."  At that point, Oldoerp's case had been appealed to the Ninth Circuit.  She had already incurred a $455 appellate filing fee in May 2011, so the origin of the additional $610.50 fee is unclear.  Despite MetLife's objection, plaintiff did not explain the fee's source in her reply brief.  Accordingly, this item is stricken from Oldoerp's request for costs.

Because this is an ERISA action, Oldoerp is also entitled to non-taxable costs where it is "'the prevailing practice in a given community' for lawyers to bill those costs separately from their hourly rates." *See Trustees. of Constr. Indus. & Laborers Health & Welfare Trust v. Redland Ins. Co.*, 460 F.3d 1253, 1258 (9th Cir. 2006) (*quoting Missouri v. Jenkins*, 491 U.S. 274, 287 (1989)).  Plaintiff argues that it is the prevailing practice for mediation costs, printing costs, carrier and delivery costs, and travel costs (including food, hotel, airfare, and public transportation) to be billed separately from her attorney's hourly rates.  In support, Petti submits a declaration stating that these are costs he would expect to bill to a client who was paying him

---

[6] Petti's fees amount to $331,620 (552.7 hours at $600/hour).  Breslo's fees total $74,565 (165.7 hours at $450/hour).

[7] Petti and Breslo seek to recover $4,795.14 and $6,042.00, respectively.

on an hourly basis. Breslo's declaration, by contrast, lacks any supporting statement regarding the passage of costs to hourly clients. Although Oldoerp's request also mentions a supporting declaration from attorney Glenn Kantor regarding the prevailing practice in "this legal community," *see* ECF No. 82 at 17:10-11, Kantor's declaration is nowhere to be found in plaintiff's filings.

Despite the paucity of supporting evidence regarding the "prevailing practice," there is no serious dispute that these are the sorts of costs an attorney in the relevant community would pass along to a client separately from the attorney's hourly rate. Numerous judges in this district have approved requests for out-of-pocket litigation costs under the "prevailing practice" standard despite slim supporting evidence from the requesting party. *See. e.g., Barnes v. AT & T Pension Benefit Plan-Nonbargained Program*, 963 F. Supp. 2d 950, 973 (N.D. Cal. 2013) (awarding costs in ERISA action for meals, travel, courier fees, and postage costs even though the supporting declarations failed to address the prevailing practice in the relevant community); *Mahach-Watkins v. Depee*, C 05-1143 SI, 2009 WL 3401281 (N.D. Cal. Oct. 20, 2009) ("The Court has adjudicated many fee and cost petitions, and finds that attorneys routinely bill their clients" for copy, mailing, and legal research costs); *Langston v. N. Am. Asset Dev. Corp. Grp. Disability Plan*, C 08-02560 SI, 2010 WL 330085 (N.D. Cal. Jan. 20, 2010) ("Plaintiff asserts that such out-of-pocket litigation expenses are normally billed separately to clients, and defendants offers [sic] no contrary evidence or authority."), *reconsidered on other grounds*, C 08-02560 SI, 2010 WL 1460201 (N.D. Cal. Apr. 12, 2010). Accordingly, it is permissible for a prevailing ERISA plaintiff in this district to recover reasonable out-of-pocket costs relating to travel, research (including non-appeal-related transcript requests), postage and courier services, and the like.

This does not, however, mean that all of Oldoerp's requested non-taxable costs are recoverable. As discussed above, it is not apparent why Breslo attended both trials and the Ninth Circuit oral argument. Although it is understandable that Ms. Oldoerp would want her attorney to be present at those proceedings, MetLife is not required to foot the bill. Because Breslo is not

entitled to recover the costs of travel to those proceedings, his request is reduced by $2,000.94.[8] Petti's request, meanwhile, is further reduced by $12 to reflect a charge—later withdrawn in plaintiff's reply brief—at a San Francisco bar.

The remainder of Petti's and Breslo's non-taxable costs are recoverable. Accordingly, when combined with the permissible taxable costs discussed above, Oldoerp is entitled to recover $8,213.70 in costs and out-of-pocket litigation expenses.[9]

## IV.   CONCLUSION

For the reasons set forth above, Oldoerp's motion is granted in part and she is entitled to recover $414,398.70 in attorney fees and costs.

IT IS SO ORDERED.

DATED:  6/12/14

_____
Honorable Richard Seeborg
United States District Judge

---

[8] This reduction includes $1,187.50 in airlines charges, $649.51 in hotel-related expenses, $81.67 in meals, and $82.26 in other miscellaneous travel fees.  It appears, though, that Breslo paid for Petti's hotel room on at least one occasion.  Accordingly, and considering that it is reasonable for him to help co-counsel prepare for trial, Breslo is permitted to recover the 10/16/2013 hotel cost in the amount of $590.86.

[9] This reflects $4,172.64 incurred by Petti and $4,041.06 incurred by Breslo.